**HALLINAN & KILLPACK LAW FIRM**
5240 E. Pima Street
Tucson, Arizona 85712
Telephone: (520) 320-5240 / Fax: (520) 372-2499
jeremy@HLFAZ.com
State Bar No. 033434/PAN 66970
**Attorneys for Plaintiff**

## UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Estate of Jose L. Ordonez, Olivia Ordonez, Jose Luis Ordonez Jr., Monica Ordonez,** | Case No.:4:23-CV-00498-SMB-JZB |
| **Plaintiffs,** | **FIRST AMENDED COMPLAINT** |
| **vs.** | **JURY TRIAL REQUESTED** |
| **Centurion of Arizona, LLC; Donna Mendoza, RN; Jessica Stevens, RN; Cassidy Morales, NP; Nicole Johnson, NP; Oyuki Coronado, NP; Lillian Daoud, NP; Michelle Bryniak, RN; Dorothy Porter, RN; Jaime Avila, RN; Murray Young, MD; Theodora Paul, M.D.** | |
| **Defendants.** | **ASSIGNED TO HON. JOHN Z. BOYLE** |

## I. NATURE OF THE CASE

Mr. Jose Luis Ordonez ("Mr. Ordonez" or "the Decedent") was incarcerated at Arizona State Prison Complex-Lewis ("ASPC-Lewis") at all material times and passed away on March 14, 2022, while still in the custody and control of the Arizona Department of Corrections, Rehabilitation, and Reentry ("ADCRR"). This case is brought by the Estate and Heirs of the Decedent, who seek remedy for his needless pain and suffering, loss of enjoyment of life, and subsequent death resulting from the Defendants' actions and inactions. As a result of

Defendants' deliberate indifference to Mr. Ordonez's serious medical needs Mr. Ordonez' progressive abdominal pain, constipation, intermittent rectal bleeding, and extreme weight loss were left ignored and untreated, resulting in a Stage IV colon cancer diagnosis, from which Mr. Ordonez passed away on March 14, 2022. Defendants, by their actions and inactions, violated Mr. Ordonez's Eight Amendment Rights to be free from cruel and unusual punishment.

## II. PARTIES

1. Plaintiff THE ESTATE OF JOSE ORDONEZ ("The Estate," "Mr. Ordonez," or "Plaintiff") represented by Personal Representative Jessica Gonzalez, as named in Probate Case PB2022-071285.

2. Plaintiff OLIVIA ORDONEZ is the mother of Jose Ordonez and, for all material times, was an individual residing in Maricopa County, Arizona.

3. Plaintiff JOSE LUIS ORDONEZ JR. is the adult son of Mr. Ordonez and, for all material times, was an individual residing in Maricopa County, Arizona.

4. Plaintiff MONICA ORDONEZ is the adult daughter of Mr. Ordonez and, for all material times, was an individual residing in Maricopa County, Arizona.

5. Defendant CENTURION OF ARIZONA, LLC ("Centurion" or "Defendant Centurion") is an Arizona Limited Liability company that was, at all material times, contracted by the ADCRR to provide constitutionally adequate medical care to individuals incarcerated in Arizona prisons, including ASPC-Lewis.

6. Defendant DONNA MENDOZA, RN ("DON Mendoza" or "Defendant Mendoza") is a duly licensed registered nurse and was, at all material times, an employee or agent of Centurion of Arizona, LLC, practicing pursuant to her license and responsible, in her individual capacity, for the provision of medical treatment to incarcerated persons within ASPC-Lewis. Defendant Mendoza was also, at all material times, serving in a supervisory capacity as the Director of Nursing ("DON") in charge of the nursing staff at ASPC-Lewis.

7. Defendant JESSICA STEVENS, RN ("ADON Stevens" or "Defendant Stevens") is a duly licensed registered nurse and was, at all material times, an employee or agent of Centurion of Arizona, LLC, practicing pursuant to her license and responsible, in her individual capacity, for the provision of medical treatment to incarcerated persons within ASPC-Lewis. Defendant Stevens was also, at all material times, serving in a supervisory capacity as the Assistant Director of Nursing ("ADON") in charge of the nursing staff at ASPC-Lewis.

8. Defendant CASSIDY MORALES, NP ("NP Morales" or "Defendant Morales") is a duly licensed nurse practitioner named in her individual capacity and was, at all material times, an employee or agent of Centurion of Arizona, LLC practicing pursuant to her license, and responsible for the provision of medical treatment to incarcerated persons within ASPC-Lewis.

9. Defendant NICOLE JOHNSON, NP ("NP Johnson" or "Defendant Johnson") is a duly licensed nurse practitioner named in her individual capacity and was, at all material

times, an employee or agent of Centurion of Arizona, LLC practicing pursuant to her license, and responsible for the provision of medical treatment to incarcerated persons within ASPC-Lewis.

10. Defendant OYUKI CORONADO, NP ("NP Coronado" or "Defendant Coronado") is a duly licensed nurse practitioner named in her individual capacity and was, at all material times, an employee or agent of Centurion of Arizona, LLC practicing pursuant to her license, and responsible for the provision of medical treatment to incarcerated persons within ASPC-Lewis.

11. Defendant LILLIAN DAOUD, NP ("NP Daoud" or "Defendant Daoud") is a is a duly licensed nurse practitioner named in her individual capacity and was, at all material times, an employee or agent of Centurion of Arizona, LLC practicing pursuant to her license, and responsible for the provision of medical treatment to incarcerated persons within ASPC-Lewis.

12. Defendant MICHELLE BRYNIAK, RN ("RN Bryniak" or "Defendant Bryniak") is a duly licensed registered nurse named in her individual capacity and was, at all material times, an employee or agent of Centurion of Arizona, LLC practicing pursuant to her license, and responsible for the provision of medical treatment to incarcerated persons within ASPC-Lewis.

13. Defendant DOROTHY PORTER, RN ("RN Porter" or "Defendant Porter") is a duly licensed registered nurse named in her individual capacity and was, at all material times, an employee or agent of Centurion of Arizona, LLC practicing pursuant to her license,

and responsible for the provision of medical treatment to incarcerated persons within ASPC-Lewis.

14. Defendant JAIME AVILA, RN ("RN Avila" or "Defendant Avila") is a duly licensed registered nurse named in their individual capacity and was, at all material times, an employee or agent of Centurion of Arizona, LLC practicing pursuant to their license, and responsible for the provision of medical treatment to incarcerated persons within ASPC-Lewis.

15. Defendant MURRAY YOUNG, M.D. ("Dr. Young" or "Defendant Young") is a duly licensed physician named in his individual capacity and was, at all material times, an employee or agent of Centurion of Arizona, LLC practicing pursuant to his license, and responsible for the provision of medical treatment to incarcerated persons within ASPC-Lewis, as well as the supervision and training of his subordinate medical staff.

16. Defendant Theodora Paul M.D. ("Dr. Paul" or "Defendant Paul", is a duly licensed medical doctor and was, at all material times, an employee or agent of Centurion of Arizona, LLC practicing pursuant to his license, and responsible for the provision of medical treatment to incarcerated persons within ASPC-Lewis, as well as the supervision and training of his subordinate medical staff. Upon information and belief was the Clinical Coordinator during the relevant time period.

## III.   REQUEST FOR JURY TRIAL

17. A jury trial is requested.

## IV. JURISDICTION AND VENUE

18. This Court has jurisdiction over Claims One through Fifteen, deriving from 28 U.S.C. § 1331.

19. This Court has supplemental jurisdiction over Claims Sixteen through Nineteen deriving from 28 U.S.C. § 1367 because the claims are so related that they form part of the same case or controversy.

20. Venue is appropriate in the Phoenix Division of the US District Court, District of Arizona under 28 U.S.C. § 1391 because the events and omissions giving rise to the claims occurred in Maricopa County, Arizona.

## V. ALLEGATIONS COMMON TO ALL CLAIMS

21. Mr. Ordonez was an inmate of Arizona State Prison Complex-Lewis ("ASPC-Lewis"), located in Buckeye, Arizona in Maricopa County, during the relevant time.

22. Beginning in or about the Spring of 2020, lab results confirmed Mr. Ordonez had a decrease in his liver function.

23. In April of 2020, Mr. Ordonez began to complain of abdominal pain. Centurion medical providers noted tenderness upon palpation of his left upper quadrant and lower abdomen and also noted Plaintiff was reporting symptoms of burning pain above a clinically observed left inguinal hernia.

24. Mr. Ordonez' inguinal hernias were located in the groin/pelvis area and were not located near the other abdominal masses and tender areas that were observed beginning in April of 2020.

25. At a May 29, 2020 clinical exam, a mass was palpated in Plaintiff's lower left pelvic area and the examining nurse ordered a hernia belt, a lower bunk sleeping arrangement, and submitted a request for review by a medical provider (physician, nurse practitioner or physician assistant).

26. On July 6, 2020, Mr. Ordonez had still not been seen by a medical provider.

27. On July 6, 2020, Mr. Ordonez submitted a Health Needs Request ("HNR"), stating that he was in a lot of pain and asked to see a provider.

28. On July 7, 2020, Mr. Ordonez was examined by RN Michelle Bryniak rather than a medical provider. When Mr. Ordonez was examined, he weighed 205 pounds. At this examination, RN Bryniak failed to consult with a medical provider regarding Mr. Ordonez's symptoms, failed to put in a request for Mr. Ordonez to see an off-site specialist, and failed to request that Mr. Ordonez undergo any diagnostic exams/testing. RN Bryniak did not schedule any follow-up appointment for Mr. Ordonez to be seen by a medical provider at a later date.

29. On or about August 5, 2020, NP Coronado reviewed Mr. Ordonez' chronic care lab results, which revealed Mr. Ordonez had elevated liver enzymes. The only treatment plan ordered by NP Coronado was for Mr. Ordonez to drink more water and to refrain

from illegal drug use. He was provided no further care, was not referred to an off-site specialist, and was not scheduled for a follow-up.

30. On or about August 9, 2020, Mr. Ordonez submitted an HNR asking again to be seen by a medical provider and described his pain as "too bad."

31. Despite requesting to see a medical provider, the Assistant Director of Nursing ("ADON"), Defendant Stevens, scheduled him to be seen by a nurse.

32. On or about August 10, 2020, RN Benjamin Tomanek noted Mr. Ordonez's continued reports of increased pain (even at rest and during urination), and clinical observations of Mr. Ordonez's bilateral inguinal hernias. RN Tomanek contacted Nurse Practitioner Coronado, who simply stated that she would discuss those issues with Mr. Ordonez at his next chronic care appointment.

33. On August 13, 2020, Mr. Ordonez had a chronic care appointment and was seen by NP Coronado. NP Coronado's treatment plan states that Mr. Ordonez was to be reassessed by a medical provider for his hernias in less than 30 days, that she ordered an abdominal x-ray (which did not reveal any obstructions), and made notations referring to the fact that Mr. Ordonez did not meet Centurion's criteria for treating chronic Hepatitis C.

34. Mr. Ordonez continued to submit HNRs reporting problems using the restroom and constant stomach and hernia pain ranging from 7/10 to a 10/10.

35. On or about August 24, 2020, Mr. Ordonez was seen by RN Michelle Bryniak and was seen again on September 5, 2020 by RN Liliana Dirja, where nursing staff noted masses and tenderness to his lower abdomen at both appointments. At both examinations, Mr.

Ordonez was "cleared to return home," and nursing staff failed to refer Mr. Ordonez to a provider or schedule him to see an off-site specialist, nor were any radiological exams/testing ordered nor any follow-up appointment scheduled.

36. On or about September 8, 2020, Mr. Ordonez was examined by NP Morales. She noted his reports of extreme pain which severely affected his ability to stand, walk or attend to his activities of daily living. NP Morales also noted Mr. Ordonez weighed 199 pounds. NP Morales did not request that Mr. Ordonez be sent out to the emergency room.

37. On September 9, 2020, NP Morales submitted an *urgent* request for off-site general surgery, which was approved by Utilization Management ("UM") on or about September 11, 2020. However, no effort was made to schedule the consultation until on or about October 7, 2020, when it was finally scheduled for October 27, 2020, over a month after the *urgent* request was placed.

38. The consultation requested on an *urgent* basis should have been scheduled **and completed within** thirty (30) days of the provider's request.

39. During that month-long delay, Mr. Ordonez continued to complain of worsened stomach pain and constipation, along with submitting numerous requests to be seen by a doctor.

40. During that month-long delay, ADON Stevens and NP Morales instructed medical staff that Mr. Ordonez should only be seen by nursing staff and not medical providers. NP Morales ordered that her plan of care be continued, with no requests for further labs, ultrasound, colonoscopy, CT scans, biopsy, or expedited specialist consultation, despite

being personally notified of this patient's complaints of worsening and changing symptoms.

41. On or about October 4, 2020, RN Jaime Avila noted Mr. Ordonez had placed four (4) HNR's asking to be seen by a provider for worsened pain and scheduled him with a provider.

42. On or about October 5, 2020, NP Morales examined the Plaintiff in response to his 4 HNR's. During the assessment, NP Morales noted Mr. Ordonez's elevated blood pressure of 140/100, weight at 193 pounds, and observed his inguinal hernias. NP Morales made no mention of the other abdominal masses palpated prior and issued no new orders. At this examination, Mr. Ordonez was not referred to see an off-site specialist, nor were any radiological exams/testing ordered, nor any follow-up appointment scheduled.

43. A few hours later, Mr. Ordonez was seen by RN Dorothy Porter, where he reported 8/10 pain with voiding, and 10/10 hernia pain. A urine dipstick test result was reported to NP Morales who issued no changes in his plan of care and made no request that he be sent to the emergency room or be seen by an off-site specialist. RN Porter's only additional treatment plan was for Mr. Ordonez to drink more water.

44. On or about October 10, 2020, NP Furar was contacted by RN Heather Safsten during an Incident Command System ("ICS"). Mr. Ordonez reported 10/10 pain, which became worse after walking and eating. NP Furar issued no new orders and made no requests for

Mr. Ordonez to be sent to the emergency room, be seen by an off-site specialist, or undergo diagnostic testing.

45. On that same day, NP Coronado reviewed Mr. Ordonez' liver lab results, noted his liver enzymes were elevated, and instructed him to drink more water. She took no further action, placed no requests for specialist consultations, and did not order further diagnostic tests/exams.

46. The Director of Nursing, RN Donna Mendoza, examined Mr. Ordonez on or about October 14, 2020, wherein she noted his complaints that he was uncomfortable all of the time, noted he had left inguinal hernia pain *and* abdominal pain, noted a negative urinalysis, and ordered his meals be delivered to his room for three days. She made no referral to a medical provider, did not place a request for Mr. Ordonez to be seen by an outside specialist, and took no other action on his behalf.

47. On or about October 19, 2020, Mr. Ordonez submitted an HNR advising that even while on Maalox and a laxative he only had bowel movements every three to four days, with substantial pain. Again, he was referred to nursing staff instead of a medical provider.

48. Mr. Ordonez was seen on or about October 20, 2020, by a nurse who consulted with NP Coronado. NP Coronado prescribed Colace (a stool softener) and issued another 3 days order for meals in his cell. NP Coronado did not place a consultation request for Mr. Ordonez to be seen by an off-site specialist and did not order further diagnostic tests/exams.

49. On or about October 27, 2020, Mr. Ordonez was examined by Dr. Varun Chakravorty at Valley Surgical Clinics, who palpated his inguinal hernias, noted his complaints of constipation, abdominal pain, flank pain, and rectal bleeding, and advised him he should have hernia surgery.

50. Despite Mr. Ordonez's reports of severe and worsening pain, his other symptoms, and the specialist's recommendations, NP Morales submitted a *routine* request for the surgery on or about November 2, 2020. The surgery was approved by UM on or about November 16, 2020, but *no effort to schedule the surgery was made* until on or about February 10, 2021. At that time, the surgery was scheduled for February 25, 2021, four (4) months after the surgeon ordered surgery.

51. During this delay, Mr. Ordonez frequently reported, in writing via HNRs, that he was experiencing worsening constipation, severe cramping in his lower abdomen, extreme pain, inability to walk more than 3 to 5 feet, and difficulty standing. Mr. Ordonez requested further exams/testing, which were largely ignored by medical staff.

52. On or about December 16, 2020, Mr. Ordonez submitted an HNR asking to speak with a medical provider as soon as possible, writing "Provider Emergency." ADON Stevens again scheduled him with a nurse.

53. On or about December 17, 2020 Mr. Ordonez was seen by RN Dorothy Porter and told her he wanted to speak with a medical provider about his severe symptoms and pending surgery. RN Dorothy Porter discussed her concerns with NP Morales, who chose not to

conduct her own physical assessment of Mr. Ordonez or to take any further action other than chart review and ordering a laxative.

54. In December 2020 and January 2021, Mr. Ordonez continued to submit multiple HNRs to be seen by a provider, detailing increased pain and requesting meals to be delivered to his cell.

55. On or about January 8, 2021, Mr. Ordonez submitted an Emergency HNR advising, "I'm in so much pain cause of my hernias its causing stomach and groaning, back pain I can't take it any more can I please please see the provider as soon as possible thank you."

56. Mr. Ordonez was not seen by a medical provider and instead was seen by RN Dorothy Porter on or about January 9, 2021. RN Porter noted Plaintiff's pulse rate was tachycardic at 106, his blood pressure was also high at 160/110, and his reports of severe, 10/10 levels of pain.

57. RN Porter contacted the on-call provider, NP Lillian Daoud, who ordered Clonidine to bring down his elevated blood pressure and pulse, an injection of Toradol (for pain), and a new prescription of Tramadol, along with orders for repeat BP checks in 2 hours, medical ice, and for his meals to be delivered to his cell. NP Daoud did not order that Mr. Ordonez be sent out to the emergency room and did not place a request for Mr. Ordonez to be seen by an off-site specialist and did not schedule him for a provider follow-up.

58. Plaintiff's routine chronic care labs revealed his liver enzymes remained abnormally high, and although he was notified of these results, medical staff took no further action.

59. Mr. Ordonez continued to submit several HNRs requesting renewals of pain medication, increased pain, and requesting to see a provider.

60. On or about January 19, 2021, Mr. Ordonez was seen by RN Anita Benavidez, who charted pain 8/10 and at worst 10/10, palpated ***five (5) firm abdominal lumps,*** noted Plaintiff's hernia repair was "pending scheduling," and discussed her assessment with NP Johnson.  NP Johnson ordered a new abdominal binder and additional laxatives but did not conduct her own physical assessment of Mr. Ordonez or take any further action.

61. On or about January 28, 2021, an ICS was initiated because of Mr. Ordonez's severe abdominal pain and unrelenting back pain, with NP Johnson advising she would see him, but to increase his Tramadol in the meantime. NP Johnson did not order that Mr. Ordonez be sent out to the emergency room.

62. On or about January 30, 2021, NP Johnson noted the patient's hernia surgery was on hold due to COVID-19. However, Mr. Ordonez was not positive for COVID-19 at the time, and there was no notation that the surgeon had delayed scheduling as a result of COVID-19. NP Johnson noted Mr. Ordonez's weight was 165 pounds (40 pounds lighter than a few months prior), for which she ordered liquid supplemental diet, and noted Plaintiff's reports of continued severe pain, with clinical observations of his grimacing on exam. NP Johnson took no other action on his behalf, did not order further diagnostic exams, and did not try to escalate (or even schedule) his necessary hernia surgery.

63. On or about February 10, 2021, Plaintiff's hernia surgery was scheduled, and NP Coronado requested his pre-operative labs.

64. On or about February 14, 2021, an ICS was initiated for Mr. Ordonez, and he reported "bad pains" for the past two days and that he thought he was going to throw up that morning, also advising he had not been able to sleep all night because of the pain and had not eaten in two days. Mr. Ordonez was seen by RN Sarah Ziegler who contacted NP Daoud. NP Daoud ordered that Mr. Ordonez receive IV fluids and a Phenergan shot, and that he drink more water. NP Daoud failed to send Mr. Ordonez out to the emergency room and did not place any consultation request for Mr. Ordonez to be seen by an outside specialist.

65. On or about February 20, 2021, an ICS was initiated for Mr. Ordonez a few hours after he was ordered to stop pain medication for his upcoming surgery. Plaintiff reported sharp abdominal pains, burping, intermittent nausea, and he was observed by nursing groaning and guarding, tachycardic with a heart rate of 107, and an increased respiratory rate at 34. RN Dale Patterson expressly noted that his symptoms were "like that of suffering pain". NP Johnson was contacted and authorized IV fluids. However, she took no further action to determine the cause of Plaintiff's abdominal pain, did not request that Mr. Ordonez be sent out to the emergency room.

66. Three days later, another ICS was issued because Mr. Ordonez's pain was an 8/10. Mr. Ordonez was seen by RN Jaime Avila, who noted that pain pills had been administered by the "pill nurse". RN Avila failed to refer Mr. Ordonez to a medical provider, failed to place a request for any diagnostic testing to be done, and failed to place a consultation request for Mr. Ordonez to be seen by an outside specialist.

67. On or about February 24, 2021, Plaintiff was seen by RN Dorothy Porter to obtain his authorization for surgery, and he expressed relief the surgery was to take place the next day.

68. On or about February 25, 2021, the hospital declined taking him for the surgery because the Rapid COVID-19 test administered by the Director of Nursing Donna Mendoza did not meet their requirements due to high rates of false negatives, and he was returned to his cell.

69. On or about March 2, 2021, Mr. Ordonez requested renewal of his meals delivered to his cell, and for medical ice, reporting "I'm in too much pain to get out of bed." He was seen by RN Dorothy Porter in his cell the following day and reported "terrible pain" and asked if his surgery had been rescheduled yet. RN Porter did not request that Mr. Ordonez be sent out to the emergency room, order additional diagnostic testing, or refer Mr. Ordonez to be seen by a provider.

70. On or about March 4, 2021, another ICS was initiated. Mr. Ordonez was seen by RN Dorothy Porter, and pain medications were administered by "pill call Nurse Collins". RN Porter failed to refer Mr. Ordonez to a provider and no follow-up was scheduled. RN Porter also failed to place any requests for diagnostic testing to be done or for Mr. Ordonez to be seen by an outside specialist.

71. On or about March 12, 2021, an ICS was initiated for Mr. Ordonez, who was observed in his cell grimacing in pain and appearing to be very weak and fatigued, reporting he'd been unable to eat or drink for three days. RN Dorothy Porter observed Mr. Ordonez and

contacted NP Johnson. NP Johnson ordered he be brought to the medical HUB, where he was provided IV fluids and pain medications. NP Johnson did not place a request for Mr. Ordonez to be sent out to the emergency room, did not schedule a follow-up, and did not order further diagnostic exams.

72. On or about March 15, 2021, Mr. Ordonez requested renewal of his meals to be delivered to his cell and medical ice and reported 10/10 pain levels. Mr. Ordonez was seen by RN Anita Benavidez, who palpated Mr. Ordonez's abdomen and noted five distinct abdominal bulges. RN Benavidez reported the findings to NP Johnson, who renewed the orders for the meals, ice and over-the-counter cream, and that Mr. Ordonez drink more water. NP Johnson failed to order any diagnostic testing, failed to place any consultation request for Mr. Ordonez to be seen by an outside specialist and failed to send Mr. Ordonez out to the emergency room.

73. On or about March 23, 2021, Plaintiff was taken to Abrazo West Campus for his hernia repair with Dr. Varun Chakravorty.  Dr. Chakravorty discovered Mr. Ordonez was riddled with cancerous masses of both lobes of his liver, his colon, and near his bladder, and who noted the bilateral inguinal hernias had no intra-abdominal contents within them. Dr. Chakravorty took biopsies of the liver masses, advised of the apparent cancer, and recommended a GI consult and colonoscopy, but did not proceed with the hernia repair.

74. Plaintiff's cancer screen labs revealed high levels of cancer markers and the liver biopsy results were noted as consistent with metastasized colon cancer, but inexplicably,

Centurion provider Dr. Paul sent Mr. Ordonez notification that his lab results were "within parameters; no added action" although she did submit urgent requests for hematology/oncology and gastroenterology.

75. Upon his return from the hospital, Mr. Ordonez was seen by RN Sarah Ziegler where he informed her of the surgeon's findings as well as that he was experiencing an 8/10 pain level.

76. On or about March 24, 2021, Plaintiff submitted an HNR reporting continued severe pain, and asked to speak with a provider as soon as possible.

77. On or about March 26, 2021, Mr. Ordonez was seen by NP Johnson who recommended he be transferred to the prison infirmary ("IPC") for pain management, then oncology. At this time Mr. Ordonez's weight was down to 145 pounds.

78. On or about March 30, 2021, Mr. Ordonez submitted an HNR wherein he reported severe pain and "knots" in his back, for which he was scheduled routine nursing the same day, where he reported he had not had a bowel movement since March 23, 2021.

79. On or about March 31, 2021, Mr. Ordonez reported 10/10 pain levels, and NP Johnson ordered a single dose of Tramadol "for now".

80. On or about April 1, 2021, Mr. Ordonez was seen by Amol Rakkar at Palo Verde Cancer Specialists who reported he had Stage IV metastatic colon cancer, with seventy (70) pounds of weight loss in the last six months, and continued abdominal pain, constipation and fatigue for which he was prescribed Tramadol, Tylenol Threes as needed, placement of a portacath, and advised to return in one month.

81. Upon returning to ASPC-Lewis, NP Johnson, despite the oncologist's orders, issued "no new orders at this time".

82. On or about April 2, 2021, an ICS was initiated for Mr. Ordonez for abdominal pain. RN Dale T Patterson observed guarding and grimacing and noted Mr. Ordonez had not been receiving Tramadol for 2 days. NP Coronado issued a verbal order for a Toradol injection.

83. A second ICS was called the afternoon of April 2, 2021, for Mr. Ordonez, with RN Jaime Avila again noting the Tramadol had not arrived.

84. On or about April 11, 2021, another ICS was initiated for severe pain.

85. On or about April 12, 2021, Mr. Ordonez submitted an HNR wherein he reported constant, severe pain and reminded NP Johnson that once she learned of his cancer, she'd promised to manage his pain better.

86. On or about April 19, 2021, Mr. Ordonez was admitted to the Lewis IPC to receive better pain and symptom management, reporting 10/10 abdominal pain.

87. On or about April 20, 2021, a portacath was placed by Dr. Ankit Harish Shah at Valleywise Health: Interventional Radiology.

88. A colonic biopsy was taken on or about April 28, 2021, and a 6 mm polyp was removed from Plaintiff's rectum which Dr. Khan advised was likely a malignant tumor in his recto-sigmoid colon, and that had likely been a cause of his rectal bleeding for several months.

89. Dr. Paul noted further decline of his weight to 128 pounds by May 10, 2021 (close to an eighty pound weight loss), and a special diet was ordered.

90. Upon information and belief, in January of 2022, Correctional Officers submitted an Executive Clemency Due to Imminent Danger of Death packet under the direction of Mr. Ordonez' doctor to facilitate the release of Mr. Ordonez into the community.

91. On March 14, 2022, Mr. Ordonez was transported from ASPC-Lewis to Abrazo West Hospital with worsening encephalopathy and abdominal pain, and, upon admission to Abrazo West, he was diagnosed with sepsis in the setting of atraumatic perforated bowel and urinary tract infection.

92. Upon information and belief, while Mr. Ordonez was at Abrazo West Hospital his family members were contacted by ADCRR officials who told them that they would not be allowed to visit Mr. Ordonez at the hospital and that Mr. Ordonez would be released into their care shortly.

93. On March 14, 2022, Mr. Ordonez passed away while still in the custody and control of ADCRR.

94. On March 15, 2022, the Maricopa County Medical Examiner's Officer ("ME's Office") conducted Mr. Ordonez's autopsy.

95. The ME's report concluded that Mr. Ordonez's cause of death was due to complications from metastatic colon cancer.

//

//

## COUNT ONE

**(Defendant Morales violated Jose Ordonez's Right to be Free from Cruel and Unusual Punishment Under the Eighth Amendment and 42 U.S.C. § 1983)**

### SURVIVAL ACTION

96. Plaintiffs incorporate the statements made above as if stated in full herein.

97. During the relevant time herein, NP Morales was acting under the color of law in her employment with Centurion of Arizona, LLC, a private company contracted with ADCRR to fulfill a traditionally government role to manage and provide medical care to individuals incarcerated at ASPC-Lewis, including the Decedent.

98. At all times relevant herein, the Decedent had the right under the 8th Amendment of the United States Constitution (via 42 U.S.C. § 1983) to serve his time in prison without being subjected to cruel and unusual punishment from NP Morales.

99. NP Morales served as one of the Decedent's primary care providers during his incarceration at ASPC-Lewis and was contacted about the Decedent's reports of severe and worsening abdominal pain numerous times, as well as physically assessed Mr. Ordonez herself on more than one occasion.

100. Although NP Morales provided the Decedent with abdominal x-rays twice, it is widely known stomach, colon and liver masses are not always revealed by x-rays, and with his continued and severe symptoms of bloody stool, severe constipation, and rectal pain, NP Morales should have ordered that Mr. Ordonez been sent for an endoscopy, a CT scan, and an ultrasound and, considering his known Hepatitis C diagnosis, a biopsy

of his liver.

101.     Similarly, although NP Morales submitted an *urgent* consultation request for Plaintiff to see a general surgeon for his known hernias on or about September 8, 2020, she followed this with a *routine* request for surgery on or about November 2, 2020 (not performed until on or about March 23, 2021).

102.     NP Morales knew her *urgent* request for the Decedent's hernia surgery consult should have been scheduled and performed within thirty days (by October 8, 2020) but took no further action when the surgeon's consultation was not performed until on or about October 27, 2020, and allowed for added delays by requesting the hernia surgery on a *routine* basis, in knowing and cruel disregard of her patient's severe pain and limitations; and then took no action when the surgery was not performed within the sixty day requirement.

103.     During the time between July 7, 2020, and December 17, 2020, the Decedent reported severe and worsening symptoms and expressly requested to be seen by a doctor or a provider at least an *additional* eight (8) times. All requests were refused by NP Morales, ADON Stevens, and other nurses, under ADON Stevens' and NP Morales' supervision and/or direction.

104.     NP Morales knew of the Decedent's reports of new and worsening symptoms during his optimum time to receive timely and adequate diagnostic radiological or lab exams in accordance with her standard of care requirements to determine the actual cause of his worsening and severe signs and symptoms, but either directed or contributed

to the delays and denials of the required exams and treatments which could have resulted in the Decedent's cancer being timely diagnosed, instead allowing his body to become riddled with incurable cancer, and ultimately death.

105.     As a proximate result of the foregoing wrongful acts of Defendant Morales, the Decedent sustained general damages, including pre-death pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with proof. In doing the foregoing wrongful acts, Defendant Morales acted in reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts of Defendant Morales were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against her in an amount adequate to punish the wrongdoers and deter future misconduct.

### COUNT TWO

**(Defendant Mendoza violated Jose Ordonez's Right to be Free from Cruel and Unusual Punishment Under the Eighth Amendment and 42 U.S.C. § 1983)**

### SURVIVAL ACTION

106.     Plaintiffs incorporate the statements made above as if stated in full herein.

107.     During the relevant time herein, DON Mendoza was acting under color of law in her employment with Centurion of Arizona, LLC, a private company contracted with ADCRR to fulfill a traditionally government role to manage and provide medical care to individuals incarcerated at ASPC-Lewis, including the Decedent.

108.    At all times relevant herein, the Decedent had the right under the 8th Amendment of the United States Constitution (via 42 U.S.C. § 1983) to serve his time in prison without being subjected to cruel and unusual punishment from DON Mendoza.

109.    DON Mendoza was the Director of Nursing at ASPC-Lewis and, as noted in detail above, examined the Decedent during the relevant time.

110.    DON Mendoza knew of Plaintiff's reports of new and worsening symptoms during his optimum time to receive timely and adequate diagnostic radiological or lab exams, but either directed or contributed to the delays and denials of the required exams and treatments which could have resulted in timely diagnoses of his cancer, instead allowing his body to become riddled with incurable cancer, and ultimately death.

111.    Defendant Mendoza, in her supervisory role as the Director of Nursing, also failed in the training, supervision, and control of her nursing staff subordinates when she failed to ensure that her nursing staff were providing adequate assessment and treatment of Plaintiff's serious medical needs.

112.    Had Defendant Mendoza timely referred the Decedent to medical providers, or in her supervisory capacity had instructed her nursing staff to refer the Decedent to medical providers, Mr. Ordonez' cancer would have been diagnosed sooner and the appropriate medical intervention would have taken place earlier.

113.    As a proximate result of the foregoing wrongful acts of Defendant Mendoza, the Decedent sustained general damages, including pre-death pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with

proof. In doing the foregoing wrongful acts, Defendant Mendoza acted in reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts of Defendant Mendoza were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against her in an amount adequate to punish the wrongdoers and deter future misconduct.

## COUNT THREE

**(Defendant Furar violated Jose Ordonez's Right to be Free from Cruel and Unusual Punishment Under the Eighth Amendment and 42 U.S.C. § 1983)**

### SURVIVAL ACTION

114.     Plaintiffs incorporate the statements made above as if stated in full herein.

115.     During the relevant time herein, NP Furar was acting under the color of law in her employment with Centurion of Arizona, LLC, a private company contracted with ADCRR to fulfill a traditionally government role to manage and provide medical care to individuals incarcerated at ASPC-Lewis, including the Decedent.

116.     At all times relevant herein, the Decedent had the right under the 8th Amendment of the United States Constitution (via 42 U.S.C. § 1983) to serve his time in prison without being subjected to cruel and unusual punishment from NP Furar.

117.     NP Furar, as noted in detail above, was contacted about Mr. Ordonez's severe abdominal pain, which worsened after eating or walking, but refused to make changes

1

2

to his plan of care, or to place a consultation request for Mr. Ordonez to be seen by an

outside specialist.

3

4

118.     NP Furar knew of Plaintiff's reports of new and worsening symptoms during his

optimum time to receive timely and adequate diagnostic radiological or lab exams in

5

6

accordance with her standard of care requirements to determine the actual cause of

Plaintiff's severe signs and symptoms, but either directed or contributed to the delays

7

8

and denials of the required exams and treatments which could have resulted in a timely

cancer diagnoses, instead allowing his body to become riddled with incurable cancer,

9

and ultimately death.

10

11

119.     As a proximate result of the foregoing wrongful acts of Defendant Furar, the

Decedent sustained general damages, including pre-death pain and suffering, and a loss

12

13

of the enjoyment of life and other hedonic damages, in an amount in accordance with

proof. In doing the foregoing wrongful acts, Defendant Furar, acted in reckless and

14

15

callous disregard for the constitutional rights of the Decedent. The wrongful acts of

Defendant Furar were willful, oppressive, fraudulent, and malicious, thus warranting the

16

17

award of punitive damages against her in an amount adequate to punish the wrongdoers

and deter future misconduct.

18

//

19

20

**COUNT FOUR**

21

**(Defendant Stevens violated Jose Ordonez's Right to be Free from Cruel and Unusual Punishment Under the Eighth Amendment and 42 U.S.C. § 1983)**

**SURVIVAL ACTION**

120.  Plaintiffs incorporate the statements made above as if stated in full herein.

121.  During the relevant time herein, ADON Stevens was acting under color of law in her employment with Centurion of Arizona, LLC, a private company contracted with ADCRR to fulfill a traditionally government role to manage and provide medical care to individuals incarcerated at ASPC-Lewis, including the Decedent.

122.  At all times relevant herein, the Decedent had the right under the 8th Amendment of the United States Constitution (via 42 U.S.C. § 1983) to serve his time in prison without being subjected to cruel and unusual punishment from ADON Stevens.

123.  ADON Stevens was the Assistant Director of Nursing supervisor at ASPC-Lewis and, as noted in detail above, was directly contacted about Plaintiff's reports of severe and worsening abdominal pain numerous times between August of 2020 and December of 2020, but denied his requests for provider exams, despite his current reports and his history of severe pain and other symptoms.

124.  ADON Stevens knew of Plaintiff's reports of new and worsening symptoms during his optimum time to receive timely and adequate diagnostic radiological or lab exams, but either directed or contributed to the delays and denials of the required exams and treatments which could have resulted in timely diagnoses of his cancer, instead allowing his body to become riddled with incurable cancer, and ultimately death.

125.     Defendant Stevens, in her supervisory role as the Assistant Director of Nursing, also failed in the training, supervision, and control of her nursing staff subordinates when she failed to ensure that her nursing staff were providing adequate assessment and treatment of Plaintiff's serious medical needs.

126.     Had Defendant Stevens timely referred the Decedent to medical providers, or in her supervisory capacity she had instructed her nursing staff to refer the Decedent to medical providers, Mr. Ordonez' cancer would have been revealed sooner and the appropriate medical intervention would have taken place earlier.

127.     As a proximate result of the foregoing wrongful acts of Defendant Stevens, the Decedent sustained general damages, including pre-death pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with proof. In doing the foregoing wrongful acts, Defendant Stevens acted in reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts of Defendant Stevens were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against her in an amount adequate to punish the wrongdoers and deter future misconduct.

//

**COUNT FIVE**

**(Defendant Daoud violated Jose Ordonez's Right to be Free from Cruel and Unusual Punishment Under the Eighth Amendment and 42 U.S.C. §1983)**

## SURVIVAL ACTION

128.     Plaintiffs incorporate the statements made above as if stated in full herein.

129.     During the relevant time herein, NP Daoud was acting under color of law in her employment with Centurion of Arizona, LLC, a private company contracted with ADCRR to fulfill a traditionally government role to manage and provide medical care to individuals incarcerated at ASPC-Lewis, including the Decedent.

130.     At all times relevant herein, the Decedent had the right under the 8th Amendment of the United States Constitution (via 42 U.S.C. § 1983) to serve his time in prison without being subjected to cruel and unusual punishment from NP Doaud.

131.     NP Daoud was, as noted in detail above, directly contacted about Plaintiff's reports of severe and worsening abdominal pain and other concerning symptoms but repeatedly failed to order any diagnostic testing, failed to place requests for the Decedent to be seen by an outside specialist, and failed to send Decedent out to the emergency room.

132.     Defendant Daoud knew of Plaintiff's reports of new and worsening symptoms during his optimum time to receive timely and adequate diagnostic radiological or lab exams, but either directed or contributed to the delays and denials of the required exams and treatments which could have resulted in timely diagnoses of his cancer, instead allowing his body to become riddled with incurable cancer, and ultimately death.

133.     Had Defendant Daoud timely requested that the Decedent undergo the necessary diagnostic testing or timely requested that the Decedent be seen and assessed by an outside specialist Mr. Ordonez' cancer would have been revealed sooner and the appropriate medical intervention would have taken place earlier.

134.     As a proximate result of the foregoing wrongful acts of Defendant Daoud, the Decedent sustained general damages, including pre-death pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with proof. In doing the foregoing wrongful acts, Defendant Daoud acted in reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts of Defendant Daoud were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against her in an amount adequate to punish the wrongdoers and deter future misconduct.

**COUNT SIX**

**(Defendant Young violated Jose Ordonez's Right to be Free from Cruel and Unusual Punishment Under the Eighth Amendment and 42 U.S.C. § 1983)**

**SURVIVAL ACTION**

135.     Plaintiffs incorporate the statements made above as if stated in full herein.

136.     During the relevant time herein, Dr. Young was acting under color of law in his employment with Centurion of Arizona, LLC, a private company contracted with ADCRR to fulfill a traditionally government role to manage and provide medical care

to individuals incarcerated at ASPC-Lewis, including the Decedent.

137.    At all times relevant herein, the Decedent had the right under the 8th Amendment of the United States Constitution (via 42 U.S.C. § 1983) to serve his time in prison without being subjected to cruel and unusual punishment from Dr. Young.

138.    At the relevant times, Dr. Young was a physician and medical supervisor at ASPC-Lewis.

139.    Defendant Young, in his supervisory role as a supervisory physician, failed in the training, supervision, and control of his medical staff subordinates when he failed to ensure that his medical staff were providing adequate assessment and treatment of Plaintiff's serious medical needs.

140.    Had Defendant Young adequately trained and supervised his subordinate medical staff at APSC-Lewis, Mr. Ordonez' cancer would have been revealed sooner and the appropriate medical intervention would have taken place earlier.

141.    As a proximate result of the foregoing wrongful acts of Defendant Young, the Decedent sustained general damages, including pre-death pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with proof. In doing the foregoing wrongful acts, Defendant Young acted in reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts of Defendant Young were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against him in an amount adequate to punish the wrongdoers and deter future misconduct.

## COUNT SEVEN

### (Defendant Johnson violated Jose Ordonez's Right to be Free from Cruel and Unusual Punishment Under the Eighth Amendment and 42 U.S.C. § 1983)

### SURVIVAL ACTION

142.     Plaintiffs incorporate the statements made above as if stated in full herein.

143.     At all times relevant herein, NP Johnson was acting under the color of law in her employment with Centurion of Arizona, LLC, a private company contracted with ADCRR to fulfill a traditionally government role to manage and provide medical care to individuals incarcerated at ASPC-Lewis, including the Decedent.

144.     At all times relevant herein, the Decedent had the right under the 8th Amendment of the United States Constitution (via 42 U.S.C. § 1983) to serve his time in prison without being subjected to cruel and unusual punishment from NP Johnson.

145.     From the Spring of 2020 through March of 2021, NP Johnson was contacted about Mr. Ordonez' conditions and symptoms numerous times, but only agreed to personally physically examine him once.

146.     From the Spring of 2020 through March of 2021, despite knowing of Mr. Ordonez' severe abdominal pain, his increasing gastric concerns of unknown etiology, and his elevated liver enzymes, NP Johnson did nothing to send the Decedent for adequate or timely radiological exams or specialist consultations, which would have revealed his cancer much earlier, when medical intervention could have been timely obtained, instead

allowing his body to become riddled with incurable cancer, and ultimately death.

147.    After Decedent's cancer diagnosis, NP Johnson failed to adequately administer post-diagnosis pain management for Decedent's extremely painful Stage IV metastasized colon cancer despite Decedent's multiple requests for better pain management and the fact that the Decedent was in constant pain.

148.    As a proximate result of the foregoing wrongful acts of Defendant Johnson, the Decedent sustained general damages, including pre-death pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with proof. In doing the foregoing wrongful acts, Defendant Johnson, acted in reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts of Defendant Johnson were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against her in an amount adequate to punish the wrongdoers and deter future misconduct.


## COUNT EIGHT

**(Defendant Coronado violated Jose Ordonez's Right to be Free from Cruel and Unusual Punishment Under the Eighth Amendment and 42 U.S.C. § 1983)**

### SURVIVAL ACTION

149.    Plaintiffs incorporate the statements made above as if stated in full herein.

150.    During the relevant time herein, NP Coronado was acting under the color of law in her employment with Centurion of Arizona, LLC, a private company contracted with

ADCRR to fulfill a traditionally government role to manage and provide medical care to individuals incarcerated at ASPC-Lewis, including the Decedent.

151.    At all times relevant herein, the Decedent had the right under the 8th Amendment of the United States Constitution (via 42 U.S.C. § 1983) to serve his time in prison without being subjected to cruel and unusual punishment from NP Coronado.

152.    NP Coronado, as noted in detail above, was contacted about Mr. Ordonez' elevated liver enzymes and his reports of severe and worsening abdominal pain numerous times, yet only chose to examine him once, in the Hepatitis C chronic care clinic, on or about August 13, 2020. During that assessment, the Decedent reported worsening pain, and NP Coronado advised he would have a follow-up with a provider in less than thirty (30) days, but took no further action to determine the cause of his severe abdominal pains.

153.    NP Coronado refused to make changes to Plaintiff's plan of care, even when notified of Plaintiff's worsening symptoms, including drastic weight loss, in November of 2020.

154.    NP Coronado knew of Plaintiff's reports of new and worsening symptoms during his optimum time to receive timely and adequate diagnostic radiological or lab exams in accordance with her standard of care requirements to determine the actual cause of Plaintiff's severe signs and symptoms, but either directed or contributed to the delays and denials of the required exams and treatments which could have resulted in a timely cancer diagnoses, instead allowing his body to become riddled with incurable cancer,

and ultimately death.

155.     As a proximate result of the foregoing wrongful acts of Defendant Coronado, the Decedent sustained general damages, including pre-death pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with proof. In doing the foregoing wrongful acts, Defendant Coronado, acted in reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts of Defendant Coronado were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against her in an amount adequate to punish the wrongdoers and deter future misconduct.

**COUNT NINE**

**(Defendant Bryniak violated Jose Ordonez's Right to be Free from Cruel and Unusual Punishment Under the Eighth Amendment and 42 U.S.C. § 1983)**

**SURVIVAL ACTION**

156.     Plaintiffs incorporate the statements made above as if stated in full herein.

157.     During the relevant time herein, RN Bryniak was acting under color of law in her employment with Centurion of Arizona, LLC, a private company contracted with ADCRR to fulfill a traditionally government role to manage and provide medical care to individuals incarcerated at ASPC-Lewis, including the Decedent.

158.    At all times relevant herein, the Decedent had the right under the 8th Amendment of the United States Constitution (via 42 U.S.C. § 1983) to serve his time in prison without being subjected to cruel and unusual punishment from RN Bryniak.

159.    Defendant Bryniak was a registered nurse at ASPC-Lewis and, as noted in detail above, saw and assessed the Decedent several times. During these assessments, Defendant Bryniak failed to request that the Decedent be seen by a medical provider, failed to place any requests for diagnostic testing, and failed to place any requests for the Decedent to be seen by an outside specialist, despite his long and troubling history of severe abdominal pain and other concerning symptoms.

160.    Defendant Bryniak knew of Plaintiff's reports of new and worsening symptoms during his optimum time to receive timely and adequate diagnostic radiological or lab exams, but either directed or contributed to the delays and denials of the required exams and treatments which could have resulted in timely diagnoses of his cancer, instead allowing his body to become riddled with incurable cancer, and ultimately death.

161.    Had Defendant Bryniak timely referred the Decedent to medical providers, placed timely requests for testing, or placed timely requests for Decedent to be seen by an outside specialist the Decedent's cancer would have been revealed sooner and the appropriate medical intervention would have taken place earlier.

162.    As a proximate result of the foregoing wrongful acts of Defendant Bryniak, the Decedent sustained general damages, including pre-death pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with

proof. In doing the foregoing wrongful acts, Defendant Bryniak acted in reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts of Defendant Bryniak were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against her in an amount adequate to punish the wrongdoers and deter future misconduct.

## COUNT TEN

**(Defendant Porter violated Jose Ordonez's Right to be Free from Cruel and Unusual Punishment Under the Eighth Amendment and 42 U.S.C. § 1983)**

### SURVIVAL ACTION

163.      Plaintiffs incorporate the statements made above as if stated in full herein.

164.      During the relevant time herein, RN Porter was acting under color of law in her employment with Centurion of Arizona, LLC, a private company contracted with ADCRR to fulfill a traditionally government role to manage and provide medical care to individuals incarcerated at ASPC-Lewis, including the Decedent.

165.      At all times relevant herein, the Decedent had the right under the 8th Amendment of the United States Constitution (via 42 U.S.C. § 1983) to serve his time in prison without being subjected to cruel and unusual punishment from RN Porter.

166.      Defendant Porter was a registered nurse at ASPC-Lewis and, as noted in detail above, saw and assessed the Decedent several times. During these assessments Defendant Porter failed to request that the Decedent be seen by a medical provider, failed

to place any requests for diagnostic testing, and failed to place any requests for the Decedent to be seen by an outside specialist, despite long and troubling history of severe abdominal pain and other concerning symptoms.

167.     Defendant Porter knew of Plaintiff's reports of new and worsening symptoms during his optimum time to receive timely and adequate diagnostic radiological or lab exams, but either directed or contributed to the delays and denials of the required exams and treatments which could have resulted in timely diagnoses of his cancer, instead allowing his body to become riddled with incurable cancer, and ultimately death.

168.     Had Defendant Porter timely referred the Decedent to medical providers, placed timely requests for testing, or placed timely requests for Decedent to be seen by an outside specialist the Decedent's cancer would have been revealed sooner and the appropriate medical intervention would have taken place earlier.

169.     As a proximate result of the foregoing wrongful acts of Defendant Porter, the Decedent sustained general damages, including pre-death pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with proof. In doing the foregoing wrongful acts, Defendant Porter acted in reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts of Defendant Porter were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against her in an amount adequate to punish the wrongdoers and deter future misconduct.

## COUNT ELEVEN

**(Defendant Avila violated Jose Ordonez's Right to be Free from Cruel and Unusual Punishment Under the Eighth Amendment and 42 U.S.C. § 1983)**

### SURVIVAL ACTION

170.     Plaintiffs incorporate the statements made above as if stated in full herein.

171.     During the relevant time herein, RN Avila was acting under color of law in her employment with Centurion of Arizona, LLC, a private company contracted with ADCRR to fulfill a traditionally government role to manage and provide medical care to individuals incarcerated at ASPC-Lewis, including the Decedent.

172.     At all times relevant herein, the Decedent had the right under the 8th Amendment of the United States Constitution (via 42 U.S.C. § 1983) to serve his time in prison without being subjected to cruel and unusual punishment from RN Avila.

173.     Defendant Avila was a registered nurse at ASPC-Lewis and, as noted in detail above, saw and assessed the Decedent several times. During these assessments Defendant Avila failed to request that the Decedent be seen by a medical provider, failed to place any requests for diagnostic testing, and failed to place any requests for the Decedent to be seen by an outside specialist, despite long and troubling history of severe abdominal pain and other concerning symptoms.

174.     Defendant Avila knew of Plaintiff's reports of new and worsening symptoms during his optimum time to receive timely and adequate diagnostic radiological or lab

exams, but either directed or contributed to the delays and denials of the required exams and treatments which could have resulted in timely diagnoses of his cancer, instead allowing his body to become riddled with incurable cancer, and ultimately death.

175.    Had Defendant Avila timely referred the Decedent to medical providers, placed timely requests for testing, or placed timely requests for Decedent to be seen by an outside specialist the Decedent's cancer would have been revealed sooner and the appropriate medical intervention would have taken place earlier.

176.    As a proximate result of the foregoing wrongful acts of Defendant Avila, the Decedent sustained general damages, including pre-death pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with proof. In doing the foregoing wrongful acts, Defendant Avila acted in reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts of Defendant Avila were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against her in an amount adequate to punish the wrongdoers and deter future misconduct.


**COUNT TWELVE**

**(Defendant Paul, Clinical Coordinator violated Jose Ordonez's Right to be Free from Cruel and Unusual Punishment Under the Eighth Amendment and 42 U.S.C. § 1983)**

**SURVIVAL ACTION**

177.    Plaintiffs incorporate the statements made above as if stated in full herein.

178.     During the relevant time herein Defendant Paul was acting under color of law in her employment with Centurion of Arizona, LLC, a private company contracted with ADCRR to fulfill a traditionally government role to manage and provide medical care to individuals incarcerated at ASPC-Lewis, including the Decedent.

179.     At all times relevant herein, the Decedent had the right under the 8th Amendment of the United States Constitution (via 42 U.S.C. § 1983) to serve his time in prison without being subjected to cruel and unusual punishment from Defendant Paul.

180.     Defendant Paul, as the Clinic Coordinator, was, at the relevant times, responsible for ensuring that incarcerated patients are timely scheduled for necessary off-site appointments and surgeries and for coordinating transport of incarcerated patients to their off-site appointments to ensure that the patients receive the necessary off-site medical care.

181.     On September 9, 2020, NP Morales first submitted an *urgent* request for off-site general surgery for the Decedent's hernia, which was approved by Utilization Management ("UM") on or about September 11, 2020.

182.     However, no effort was made to schedule the consultation until on or about October 7, 2020, when it was finally scheduled for October 27, 2020, over a month after the *urgent* request was placed.

183.     Upon information and belief, Defendant Paul, in her role as Clinical Coordinator, was aware that a consultation requested on an *urgent* basis should have been scheduled and completed within thirty (30) days of the provider's request.

184.     During that month-long delay, Mr. Ordonez continued to complain of worsened stomach pain and worsened constipation along with numerous requests to be seen by a doctor.

185.     On November 2, 2020, NP Morales put in a second consultation request for the Decedent to be scheduled for a necessary hernia surgery.

186.     The consultation request for the hernia surgery was approved by the Utilization Management Team ("UMT") on or about November 16, 2020.

187.     However, Defendant Paul then made no effort to schedule the Decedent for his necessary hernia surgery until on or about February 10, 2021, approximately four months after the consultation request was approved.

188.     The decedent's hernia surgery was then scheduled for February 25, 2021.

189.     Had Defendant Paul timely scheduled the Decedent to receive his necessary hernia surgery the Decedent's cancer would have been revealed sooner and the appropriate medical intervention would have taken place earlier.

190.     As a proximate result of the foregoing wrongful acts of Defendant Paul, the Decedent sustained general damages, including pre-death pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with proof.

**COUNT THIRTEEN**

**(Defendant Centurion violated Jose Ordonez's Right to be Free from Cruel and Unusual Punishment Under the Eighth Amendment and 42 U.S.C. § 1983 by its policies and practices)**

## SURVIVAL ACTION

191.     Plaintiffs incorporate the statements made above as if stated in full herein.

192.     At all times relevant herein, Centurion was acting under the color of the law as a private company fulfilling a traditionally governmental role through its contract with ADCRR to manage and provide all medical care for inmates within Arizona prison facilities.

193.     At all times relevant herein, Centurion employees and agents were working under Centurion's policies, procedures, and practices as the Decedent's medical care providers while he was an inmate at ASPC-Lewis.

194.     At all times relevant herein, Centurion through its promulgated policies or practices, knowingly directed its employees and agents, in acts and omissions, in care that resulted in systematic, substandard medical care for the Decedent, in violation of standards of care requirements and in deliberate disregard of the Decedent's serious medical needs, which resulted in known and substantial risks of harm to the Decedent including, but not limited to, substandard and dangerous delays in providing Mr. Ordonez with: competent and timely provider exams and follow-ups; adequate radiological exams, lab tests, and specialist consultations; and in implementing treatment plans in accordance with standard of care for Mr. Ordonez' serious medical needs.

195.     As a proximate result of the foregoing wrongful acts of Defendant Centurion, the Decedent sustained general damages, including pre-death pain and suffering, and a loss

of the enjoyment of life and other hedonic damages, in an amount in accordance with proof. In doing the foregoing wrongful acts, Defendant Centurion acted in reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts of Defendant Centurion were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against her in an amount adequate to punish the wrongdoers and deter future misconduct.

## COUNT FOURTEEN

**(All Defendants are liable for the Wrongful Death of Jose Ordonez Pursuant to 42 U.S.C. §1983)**

### WRONGFUL DEATH

196.     Plaintiffs incorporate the statements made above as if stated in full herein.

197.     Defendants, acting under color of law, deprived the Decedent of rights, privileges, and immunities secured by the Constitution and laws of the United States by, among other things, recklessly, and with deliberate indifference, disregarding Decedent's medical condition and needs, proximately causing his death.

198.     Plaintiffs Olivia Ordonez, Jose Luis Ordonez Jr., and Monica Ordonez are the proper parties with standing pursuant to A.R.S. § 12-612 (incorporated herein by virtue of 42 U.S.C. § 1988) to bring this wrongful death claim pursuant to 42 U.S.C. § 1983.

199.     As a proximate result of the Defendants' conduct, Plaintiffs have been deprived of the continued companionship and society of their son and father, and have suffered

and will continue to suffer in the future a loss of love, affection, companionship, care, protection, guidance, as well as pain, grief, sorrow, anguish, stress, shock, and mental suffering, and have suffered both economic and non-economic damages in an amount to be proven at trial.

200.     In doing the foregoing wrongful acts, the Defendants acted with a reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

### COUNT FIFTEEN

**(All Defendants are liable for the Deprivation of the Rights of Olivia Ordonez, Jose Ordonez Jr., and Monica Ordonez to Familial Relationships with the Decedent Pursuant to 42 U.S.C. § 1983)**

201.     Defendants, acting under color of state law, deprived Plaintiffs Olivia Ordonez, Jose Luis Ordonez Jr. and Monica Ordonez of their rights to a familial relationship with the Decedent without due process of law in violation of the Fourteenth Amendment by their conscious-shocking deliberate indifference to Decedent's medical condition and needs, causing Decedent's death.

202.     As a proximate result of the Defendants' conduct, Plaintiff Olivia Ordonez has been deprived of the continued companionship and society of her son, and has suffered

and will continue to suffer in the future a loss of love, affection, companionship, care, protection, guidance, as well as pain, grief, sorrow, anguish, stress, shock, and mental suffering, and has suffered both economic and non-economic damages in an amount to be proven at trial.

203.    As a proximate result of the Defendants' conduct, Plaintiffs Jose Ordonez Jr. and Monica Ordonez have been deprived of the continued companionship and society of their father, and have suffered and will continue to suffer in the future a loss of love, affection, companionship, care, protection, guidance, as well as pain, grief, sorrow, anguish, stress, shock, and mental suffering, and have suffered both economic and non-economic damages in an amount to be proven at trial.

204.    In doing the foregoing wrongful acts, the Defendants acted with a reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

**COUNT SIXTEEN**

**(Defendants Morales, Johnson, Furar, Daoud, and Coronado are liable for Medical Negligence/Malpractice Pursuant to A.R.S. § 12-561, et seq.)**

**SURVIVAL ACTION**

205.     Plaintiffs incorporate the statements made above as if stated in full herein.

206.     A licensed medical professional in the State of Arizona is held to the standards of a reasonable medical professional with similar training, working in similar circumstances.

207.     A reasonable licensed nurse practitioner with similar training and working in similar circumstances as Defendants Morales, Johnson, Furar, Daoud, and Coronado, would have ordered follow-up, adequate radiological exams by July 2020 through March 23, 2021, cancer screening labs or liver biopsy, and requested consultation with a gastroenterologist, to determine the cause of Decedent's unexplained abdominal pain and increasing gastric concerns as soon as possible.

208.     A reasonable licensed nurse practitioner with similar training and working in similar circumstances as Defendants Morales, Johnson, Daoud, and Coronado, would have made certain the surgeon's exam and surgery were performed as soon as possible in light of the patient's severe pain levels and increasing signs and symptoms.

209.     Defendants Morales, Johnson, Furar, Daoud, and Coronado, did not afford Decedent timely or adequate diagnostic tests and exams or treatment within their professional standards of care, which constitute medical negligence or medical malpractice.

210.     Defendants Morales, Johnson, Furar, Daoud, and Coronado failed to adequately administer post-diagnosis pain management for Decedent's extremely painful Stage IV

metastasized colon cancer despite Decedent's multiple requests for better pain management and the fact that the Decedent was in constant pain.

211.    But for the medical negligence or malpractice of Defendants Morales, Johnson, Furar, Daoud, and Coronado, the cause of Decedent's pain and other severe gastric symptoms would have been revealed long before his cancer grew and spread to the point where it was incurable, and ultimately resulted in his death.

## COUNT SEVENTEEN

**(Defendant Young and Defendant Paul are liable for Medical Negligence/Malpractice Pursuant to A.R.S. § 12-261, et seq.)**

### SURVIVAL ACTION

212.    Plaintiffs incorporate the statements made above as if stated in full herein.

213.    A licensed medical professional in the State of Arizona is held to the standards of a reasonable medical professional with similar training, working in similar circumstances.

214.    A reasonable licensed physician with similar training and working in similar circumstances as Defendant Young and or Defendant Pau;, would have adequately trained and supervised his subordinate medical staff, such as nurse practitioners, to ensure that medical staff were properly ordering follow-ups and radiological exams, requesting the necessary consultations with outside specialists, or otherwise providing necessary and proper assessment and treatment of the Decedent's serious medical needs.

215.     Defendant Young and or Defendant Paul, by his or her failure to train and supervise his subordinate medical staff, did not afford Decedent timely or adequate diagnostic tests and exams or treatment, which constitute medical negligence or medical malpractice.

216.     But for the medical negligence or malpractice of Defendant Young and or Defendant Paul, the cause of Decedent's pain and other severe gastric symptoms would have been revealed long before his cancer grew and spread to the point where it was incurable, and ultimately resulted in his death.

### COUNT EIGHTEEN

**(Defendants Porter, Stevens, Mendoza, Avila, and Bryniak are liable for Medical Negligence/Malpractice Pursuant to A.R.S. § 12-561, et seq.)**

### SURVIVAL ACTION

217.     Plaintiffs incorporate the statements made above as if stated in full herein.

218.     A licensed medical professional in the State of Arizona is held to the standards of a reasonable medical professional with similar training, working in similar circumstances.

219.     A reasonable licensed registered nurse with similar training and working in similar circumstances as Defendants Porter, Stevens, Mendoza, Avila, and Bryniak would have ordered adequate follow-up radiological exams, cancer screening labs or a liver biopsy, and requested consultation with a Centurion medical provider and/or an

outside gastroenterologist specialist to determine the cause of Decedent's unexplained abdominal pain and increasing gastric concerns as soon as possible.

220.    A reasonable licensed registered nurse with similar training and working in similar circumstances as Defendants Porter, Stevens, Mendoza, Avila, and Bryniak would have made certain the surgeon's exam and surgery were performed as soon as possible in light of the patient's severe pain levels and increasing signs and symptoms.

221.    Defendants Porter, Stevens, Mendoza, Avila, and Bryniak did not afford Decedent timely or adequate diagnostic tests and exams or treatment within their professional standards of care, which constitute medical negligence or medical malpractice.

222.    Defendants Porter, Stevens, Mendoza, Avila, and Bryniak failed to adequately administer post-diagnosis pain management for Decedent's extremely painful Stage IV metastasized colon cancer despite Decedent's multiple requests for better pain management and the fact that the Decedent was in constant pain.

223.    But for the medical negligence or malpractice of Defendants Porter, Stevens, Mendoza, Avila, and Bryniak the cause of Decedent's pain and other severe gastric symptoms would have been diagnosed long before his cancer grew and spread to the point where it was incurable, and ultimately resulted in his death.


**COUNT NINETEEN**

**(All Defendants are liable for the Wrongful Death of Mr. Ordonez Pursuant to A.R.S. §
12-611)**

**WRONGFUL DEATH**

224.     Plaintiffs incorporate the statements made above as if stated in full herein.

225.     As a direct and proximate result of the wrongful conduct by the Defendants Mr.
Jose Ordonez died.

226.     Pursuant to Arizona Revised Statutes § 12-612, the Plaintiffs are entitled to
maintain an action for wrongful death against the Defendants in this matter for the loss
their son and father.

227.     As the direct and proximate result of these Defendants' negligence, Plaintiffs
Olivia Ordonez, Jose Ordonez Jr., and Monica Ordonez have been deprived of the
continued companionship and society of their son and father, and have suffered, and will
continue to suffer in the future, a loss of love, affection, companionship, care, protection,
guidance, as well as pain, grief, sorrow, anguish, stress, shock, and mental suffering, and
have suffered both economic and non-economic damages in an amount to be proven at
trial.

228.     In doing the foregoing wrongful acts, the Defendants acted with a reckless and
callous disregard for the constitutional rights of the Decedent. The wrongful acts were
willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive
damages against each individual defendant in an amount adequate to punish the
wrongdoers and deter future misconduct.

FOR THE REASONS STATED ABOVE, Plaintiffs request an entry of judgment in their favor and against all Defendants as follows:

A.  General damages in an amount to be proven at trial, as to the causes of action, claims, and theories of relief alleged herein;

B.  For funeral and burial expenses, and loss of financial support;

C.  Exemplary damages against the Defendants in an amount sufficient to make an example of those defendants and to deter future misconduct;

D.  Punitive damages against the Defendants in an amount sufficient to punish the Defendants for their misconduct;

E.  For an award of his costs realized herein pursuant to A.R.S. § 12-341;

F.  For reasonable attorney's fees and litigation costs pursuant to 42 U.S.C. § 1988;

G.  For all other damages allowed under federal and state law and;

H.  For such other relief the Court deems just and proper in the circumstances.

RESPECTFULLY SUBMITTED this   9th day of October, 2023.

By:        */s/ Jeremy Killpack*
          Jeremy KillpackHallinan & Killpack Law Firm
          *Attorney for the Plaintiffs*